PHYSICIANS INSURANCE EXCHANGE, Plaintiff-Appellant, v. DOUGLAS L. JENNINGS *et al.*, Defendants-Appellees.—PHYSICIANS INSURANCE EXCHANGE, Plaintiff and Counterdefendant-Appellee, v. CONTINENTAL INSURANCE COMPANY, Defendant and Counterplaintiff-Appellant.

First District (5th Division) Nos. 1—99—3445, 1—00—2235 cons.

Opinion filed September 1, 2000.

444

John F. Horvath, of Horvath & Lieber, P.C., of Chicago, for Physicians Insurance Exchange.

Michael L. Resis, of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for Continental Insurance Company.

JUSTICE GREIMAN delivered the opinion of the court:

For the trial advocate, appellate jurisdiction is akin to strolling through a minefield. This appeal arises out of a declaratory judgment action and counterclaim filed by Physicians Insurance Exchange (Physicians) and Continental Insurance Company (Continental), respectively, concerning coverage under professional liability policies issued to Dr. Douglas Jennings. The trial court ruled that (1) Dr. Jennings was covered under Physicians' policy but not covered under Continental's policy; and (2) Continental was entitled to reimbursement for the cost of its discovery depositions. Physicians now appeals. The issues presented are whether (1) this court has jurisdiction over the declaratory judgment order, which we find it does not; and (2) the trial court erred in awarding costs to Continental, which we find was error.

On October 16, 1991, Dr. Jennings was the attending anesthesiologist during the surgery of Norman Heistand. The surgery took place at Olympia Fields Osteopathic Hospital (Olympia), where Dr. Jennings was on staff. During surgery, Heistand suffered at least two periods of significantly low blood pressure due to blood loss. Heistand suffered a stroke either during or immediately after surgery which left him blind and mentally handicapped.

At the time, Dr. Jennings had a professional liability policy with Continental for the period of August 5, 1991, to July 1, 1992. The policy provided Dr. Jennings with coverage and legal defense for any claim occasioned by professional services performed or that should have been performed during the coverage period as long as Dr. Jen-

nings reported the claim to the insurer in writing as required by the policy within the coverage period. Dr. Jennings was required to report any circumstance that might later result in a claim even if no claim had yet been made.

After the surgery, Dr. Jennings moved to Washington and entered into a professional liability policy with Physicians after filling out an application for insurance. The policy was effective from July 1, 1992, to January 1, 1993, with a retroactive date of August 1, 1991. Physicians renewed the policy twice; the renewal provisions are identical to the initial policy provisions. The policy provided Dr. Jennings with coverage and legal defense for any claim resulting from direct patient treatment as long as Dr. Jennings reported the claim to the insurer as required by the policy within the coverage period and no exclusions applied. The policy did not cover any potential claim of which Dr. Jennings was aware or reasonably should have been aware as of the effective date regardless of whether it had been reported. On the application, Dr. Jennings stated that he was not aware of any factor that might ripen into a claim.

On December 16, 1993, Josephine Weaver, Heistand's guardian, filed a medical malpractice suit against Dr. Jennings. The complaint alleged that Dr. Jennings failed to evaluate and control Heistand's blood loss both during and after the surgery. Dr. Jennings tendered the lawsuit to both Physicians and Continental. Physicians hired counsel to defend Dr. Jennings; Continental refused to provide either coverage or a defense.

On July 19, 1994, Physicians filed a declaratory judgment action against Dr. Jennings, Continental, and Heistand's guardian.[1] Count I requested a finding that Physicians owed no duty to defend or indemnify Dr. Jennings in the underlying action. Physicians argued that because Dr. Jennings knew or reasonably should have known that the surgery was a "potential claim," exclusion (u) precluded coverage under its policy. Count II requested an alternative finding that Continental was required to contribute to Dr. Jennings' defense because Dr. Jennings reported the surgery to Continental as a possible claim under its policy. Count II also requested a finding that Continental owed a duty to contribute to any judgment or settlement that Dr. Jennings might be obligated to pay. Continental filed a counterclaim in which it requested a finding that Dr. Jennings was not entitled to defense or indemnification under its policy. Continental argued that Dr. Jennings was not covered under its "claims-made"

---

[1]Heistand's guardian was eventually dismissed from the declaratory judgment action.

policy because the surgery was not reported as a claim during the coverage period.

In December 1997, the jury in the underlying action rendered a verdict in favor of Dr. Jennings.[2] Physicians and Dr. Jennings signed a settlement agreement in which Physicians dismissed Dr. Jennings from the declaratory judgment action and agreed to pay him $50,000 for attorney fees spent in defending that action. Physicians continued to deny that Dr. Jennings was entitled to coverage for the underlying lawsuit.

Continental, Physicians, and Dr. Jennings filed cross-motions for summary judgment. After a hearing, the trial court denied the motions. The judge found that a material issue of fact existed as to whether (1) Dr. Jennings knew or reasonably should have known that a potential claim might be brought against him at the time he entered into the agreement with Physicians; and (2) Continental received notice of the claim within the effective dates of its policy. The judge also found that Washington law applied to the dispute between Physicians and Dr. Jennings.

During discovery, depositions of the following six witnesses were taken: Dr. Jennings, Daniel Nash (Continental's insurance representative), Donna DiTuri (a claims examiner for Continental), Dr. Edward Brunner (Physicians' expert), Dr. Timothy Starck (Dr. Jennings' expert), and John Karlen (Physicians' underwriting vice president).

It appears that the parties gave opening statements on May 7, 1999. Continental submitted a trial brief. The parties stipulated to several facts and various provisions of the two policies. The parties also stipulated to the testimony of the six witnesses who had previously been deposed.

On June 29, 1999, the trial court ruled that Dr. Jennings was entitled to coverage under Physicians' policy but not under Continental's policy. The judge indicated that he had read Continental's trial brief, the parties' closing arguments, and the stipulated material. The judge found that exclusion (u) did not apply because the Heistand surgery was not a "medical incident"; that Dr. Jennings was under no notice of any possible claim against him in connection with the surgery; that Continental's policy was a claims-made policy; and that Dr. Jennings had not reported the incident to Nash within the meaning of Continental's policy.

On July 23, 1999, Physicians filed a notice of appeal (No. 1—99—2643).

On July 29, 1999, Continental filed a motion to tax costs pursuant

---

[2]Weaver filed a notice of appeal, but later abandoned it.

to section 5—109 of the Code of Civil Procedure (735 ILCS 5/5—109 (West 1998)).

Physicians and Continental stipulated pursuant to Supreme Court Rule 309 (134 Ill. 2d R. 309) to the dismissal of Physicians' appeal without prejudice to refiling it. On September 28, 1999, the trial court entered an order dismissing the appeal. On September 29, 1999, Physicians filed a second notice of appeal (No. 1—99—3445) from both the June 29, 1999, and August 31, 1999, orders.

On August 31, 1999, the trial court awarded Continental costs in the amount of $1,595.85. Apparently, this sum included $1,375.85 for six deposition transcripts and $220 for Continental's appearance fees and counterclaim costs.

On April 13, 2000, Continental filed a motion to strike the portion of Physicians' opening brief asking this court to review the trial court's declaratory judgment order, arguing that this court lacked jurisdiction over that order. This court ordered the motion taken with the case.

On May 19, 2000, Physicians filed a motion to vacate the trial court's September 28, 1999, dismissal order pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1998)). The motion states that "[u]pon belief that defendant's motion [for costs] rendered plaintiff's first notice of appeal premature, plaintiff and defendant stipulated in writing to dismiss 'plaintiff's appeal without prejudice to the refiling of the appeal.' " The motion further states that if Continental's attorney had not agreed to the dismissal of Physicians' first notice of appeal without prejudice to refiling it, Physicians would not have dismissed the appeal; it was the parties' intent that Physicians would be allowed to pursue its appeal from the trial court's declaratory judgment order; that Physicians "did not know and had no reason to suspect" that Continental would move to strike a portion of Physicians' brief; that Physicians acted diligently in filing its motion to vacate; and that Continental would not be prejudiced if the trial court vacated the dismissal order. Attached to the motion is an affidavit signed by Physicians' attorney.

Continental did not file a motion to strike the petition. It did, however, file a response in which it stated that the trial court's dismissal order was not a final order for purposes of section 2—1401. The response further stated that section 2—1401 does not address errors of law, namely, the erroneous belief that Continental's motion for costs rendered the first notice of appeal premature. Continental asserted that Physicians' attorney proposed, drafted, and sent the stipulation to Continental and that Continental's attorney did not suggest, revise, or encourage the stipulation. Continental argued that the courts are not bound by parties' stipulations on questions of law such as jurisdic-

tion. Furthermore, Continental maintained that by signing the stipulation it did not agree that the appellate court would have jurisdiction over the trial court's declaratory judgment order once Physicians filed its second notice of appeal. Attached to the response is an affidavit signed by Continental's attorney.

After a hearing on June 15, 2000, the trial court granted the motion and entered an order vacating the dismissal order.

On June 21, 2000, Physicians filed a motion to strike Continental's motion to strike. Physicians argued that Continental's motion to strike is moot because the trial court's order vacating the dismissal of Physicians' first appeal rendered the dismissal order a nullity. This court ordered the motion taken with the case.

Continental has filed a motion advising this court that it has filed a timely appeal of the trial court's June 15, 2000, order (No. 1—00—2235). This court granted the motion and consolidated Nos. 1—99—3445 and 1—00—2235.

Succinctly stated, the jurisdictional issues we must address are (1) whether the order of June 29, 1999, which related to coverage, was a final order and the effect of the dismissal of the notice of appeal as to that order; (2) the consequences of the fact that the notice of appeal was dismissed by stipulation "without prejudice"; and (3) the jurisdictional impact upon the vacation of the order dismissing the notice of appeal pursuant to section 2—1401 of the Code of Civil Procedure some eight months later.

The first issue we must address is whether this court has jurisdiction over the trial court's June 29, 1999, declaratory judgment order. Specifically, we must determine the effect of Continental's motion for costs on Physicians' first notice of appeal. Continental asserts that its motion for costs was not a posttrial motion that extended the time for filing a notice of appeal. Continental contends that because Physicians dismissed the July 23, 1999, appeal, the notice of appeal filed on September 29, 1999, vested this court with jurisdiction only as to the trial court's August 31, 1999, order relating to costs.

■ A final order or judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties to the litigation. *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113 (1978). A final order in a civil case is appealable pursuant to Supreme Court Rule 303 (155 Ill. 2d R. 303). Rule 303(a)(1) provides that a notice of appeal must be filed within 30 days after entry of the final judgment appealed from or, "if a timely post-trial motion directed against the judgment is filed ***, within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303(a)(1). Rule 303(a)(2) provides

that a notice of appeal filed before entry of the order disposing of the last pending postjudgment motion has no effect and must be withdrawn by the party who filed it by moving for dismissal pursuant to Rule 309. 155 Ill. 2d R. 303(a)(2). The impact of a timely postjudgment motion is effective whether filed before or after the notice of appeal. A new notice of appeal must be filed within 30 days after entry of the order disposing of the last pending posttrial motion. In order to qualify as a posttrial motion pursuant to Rule 303, a motion must be directed against the original judgment. *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458 (1990). The motion must request one of the types of relief specified in section 2—1203 of the Code of Civil Procedure. *Marsh*, 138 Ill. 2d at 461. Specifically, the motion must request a rehearing, retrial, modification, or vacation of judgment. 735 ILCS 5/2—1203 (West 1998).

■ A motion to tax costs is not a posttrial motion that tolls the running of the time within which a notice of appeal must be filed under Rule 303(a)(2). For example, in *Mitchell v. Atwood Enterprises, Inc.*, 253 Ill. App. 3d 475 (1993), the trial court entered an order on January 4, 1993, allocating a settlement amount between the parties. On January 15, 1993, the employer moved to determine costs. On January 21, 1993, the employer filed its notice of appeal from the trial court's order. On February 1, 1993, the trial court awarded the employee costs. The employee moved to dismiss the appeal. The appellate court held that the employer's motion for costs raised a matter that was supplemental to the issues in the notice of appeal and therefore did not extend the proper time for appeal of the trial court's January 4, 1993, order. *Mitchell*, 253 Ill. App. 3d at 478. As a result, the employer's notice of appeal was sufficient to vest the appellate court with jurisdiction over the trial court's allocation of the settlement. In *Berger v. Matthews*, 216 Ill. App. 3d 942 (1991), the court held that a motion for deposition costs is collateral to the trial court's judgment. In *In re Application of Lake County Collector*, 279 Ill. App. 3d 133 (1996), the court found that the respondent's motion for statutory costs was not a motion directed against the trial court's order vacating the tax deed. But see *Perkins v. Harris*, 308 Ill. App. 3d 1076 (1999) (defendant's appeal, apparently filed 30 days after the motion for costs, found to be timely).

The fact that Illinois courts have found that certain motions for attorney fees are not directed against the trial court's judgment provides further support for this result. For example, in *Marsh*, the plaintiff filed a notice of appeal on the same day the defendant filed a motion for sanctions under section 2—611 of the Code of Civil Proce-

dure.[3] The Illinois Supreme Court held that the defendant's motion for sanctions was not a posttrial motion within the meaning of Rule 303(a) because it did not seek a modification of the original judgment, which related to alleged zoning violations by a church. *Marsh*, 138 Ill. 2d at 462. The court reasoned that the question of whether sanctions were appropriate required "an independent determination, entirely distinct from judgment previously entered." *Marsh*, 138 Ill. 2d at 462. See also *Berger*, 216 Ill. App. 3d at 944 (motion for attorney fees under Rule 137 is not a posttrial motion for jurisdictional purposes); *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977 (1994) (same).

■ Here, Continental's motion sought costs accrued in the course of taking depositions. The declaratory judgment order related to medical malpractice coverage under competing insurance policies. The trial court's granting of Continental's motion did not result in modifying its original judgment. Therefore, Continental's motion was not directed against the declaratory judgment order. As in *Marsh*, the trial court's decision on the issue of deposition costs had no bearing on the effect of the trial court's declaratory judgment order. Continental's motion for costs did not directly challenge the judgment that was the basis of Physicians' first notice of appeal. Therefore, Physicians' first notice of appeal was timely and vested this court with jurisdiction over the trial court's declaratory judgment order.

■ Supreme Court Rule 309 provides that "[b]efore the record on appeal is filed in the reviewing court, the trial court may dismiss the appeal of any party (1) on motion of that party or (2) on stipulation of the parties." 134 Ill. 2d R. 309. See also *Comfort v. Wheaton Family Practice*, 229 Ill. App. 3d 828 (1992). On September 28, 1999, the trial court dismissed the appeal pursuant to the parties' stipulation under Rule 309. The record was filed in this court on November 30, 1999. Therefore, the trial court properly dismissed Physicians' notice of appeal. A trial court is revested with jurisdiction upon dismissal of an appeal. *Rickard v. Pozdal*, 31 Ill. App. 3d 542 (1975). Therefore, this court lost jurisdiction of the trial court's declaratory judgment order upon the trial court's dismissal of Physicians' appeal.

■ We reject Physicians' argument that the stipulation prevents Continental from attacking the trial court's dismissal order. Generally, a stipulation between parties will be enforced unless it is a result of fraud or is contrary to the public morals. *Catholic Bishop v. Village of*

---

[3]Section 2—611 is now embodied in Supreme Court Rule 137 (155 Ill. 2d R. 137), which provides for sanctions, including reasonable attorney fees, where untrue pleadings are filed.

*Justice*, 84 Ill. App. 3d 827 (1980). However, appellate jurisdiction cannot be conferred by agreement, waiver, or estoppel. See *Currie v. Lao*, 148 Ill. 2d 151 (1992); *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984 (1997); *Martin v. Cajda*, 238 Ill. App. 3d 721 (1992). *Schumacher v. Continental Air Transport Co.*, 204 Ill. App. 3d 432 (1990), is distinguishable. Although the *Schumacher* court held that the plaintiff was estopped from challenging the timeliness of the defendant's posttrial motion, the plaintiff unintentionally misled the defendant by not telling defense counsel that he had the written order entered *nunc pro tunc*. Schumacher, 204 Ill. App. 3d at 434. In contrast, Physicians does not allege that Continental misled it by agreeing to the stipulation. Therefore, the parties' stipulation does not change the fact that this court lost jurisdiction over the trial court's declaratory judgment order once the trial court dismissed Physicians' appeal.

■ We must next determine whether the trial court had jurisdiction to award costs to Continental. The filing of a notice of appeal transfers jurisdiction from the trial court to the appellate court *instanter*. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153 (1998). However, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment. *In re Marriage of Sawyer*, 264 Ill. App. 3d 839 (1994). "Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from." *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066, 1073 (1987). The trial cannot enter an order that would modify the judgment or its scope. *Sawyer*, 264 Ill. App. 3d at 850. For example, in *Town of Libertyville*, the trial court found that it did not have jurisdiction to hear the defendants' application for attorney fees and costs filed pursuant to section 7—123(a) of the Code of Civil Procedure because the plaintiff had previously filed a notice of appeal from the judgment dismissing its complaint. The appellate court, in reversing, held that the notice of appeal from the final judgment in the condemnation proceeding did not deprive the trial court of jurisdiction to hear the collateral or supplemental matter of fees and costs. *Town of Libertyville*, 152 Ill. App. 3d at 1073. See also *Mitchell*, 253 Ill. App. 3d at 478 (employer's motion for costs raised a matter supplemental to the issues recognized in the notice of appeal).

Continental relies on *Premier Electrical Construction Co. v. Morse/Diesel, Inc.*, 257 Ill. App. 3d 445 (1993), for the contention that a motion to tax costs does not affect appellate jurisdiction over all matters that are the subject of the appeal once the notice of appeal is filed. However, we find that *Premier* actually supports Physicians' position.

In *Premier*, the trial court granted summary judgment in favor of the defendant on April 30, 1992. On May 29, 1992, the plaintiff filed its notice of appeal. On that same date, the defendant filed a motion to tax costs pursuant to section 5—110 of the Code of Civil Procedure.[4] The trial court struck the motion, finding that it lacked jurisdiction to decide the motion since a notice of appeal had been filed. This court held that the trial court had jurisdiction to hear the motion to tax costs. *Premier*, 257 Ill. App. 3d at 462. Although the court did not expressly hold that the motion was collateral to the trail court's judgment, it found that the filing of a notice of appeal in the underlying action did not affect the trial court's jurisdiction to consider the motion. *Premier*, 257 Ill. App. 3d at 462.

Illinois courts have also held that a trial court has jurisdiction over a motion for sanctions notwithstanding a previously filed notice of appeal. For example, in *American National Bank & Trust Co. v. Bus*, 212 Ill. App. 3d 133 (1991), the trial court entered summary judgment in favor of the defendants on December 22, 1989. The defendants filed a section 2—611 motion for sanctions on January 19, 1990. On January 22, 1990, the plaintiffs filed a notice of appeal from the order granting summary judgment to defendants. The trial court subsequently denied the motion for sanctions. The appellate court held that the plaintiffs' appeal from the underlying judgment did not deprive the trial court of jurisdiction to consider the section 2—611 motion. *American*, 212 Ill. App. 3d at 137. See also *In re Estate of Trampenau*, 88 Ill. App. 3d 690 (1980) (same); *Chicago Title & Trust Co. v. Czubak*, 67 Ill. App. 3d 184 (1978) (finding that an order for attorney fees and costs under section 41 of the Civil Practice Act, the predecessor to section 2—611, relates to a matter not affected by the appeal or dependent on the outcome of the suit).

■ Therefore, we find that Physicians' July 23, 1999, notice of appeal from the trial court's declaratory judgment order did not deprive the trial court of jurisdiction to hear the matter of deposition costs pursuant to section 5—109.

■ Continental asserts that the trial court's dismissal order was not final for purposes of section 2—1401. Relief from a final and appealable order after 30 days is governed by the provisions of section

---

[4]Section 5—110 provides that a party may recover costs if the trial court enters judgment in that party's favor upon any motion directed to the complaint. Section 5—109, which is the provision under which Continental filed its motion, provides that a defendant can recover costs if judgment is entered against the plaintiff. Both statutes provide the same relief to a defendant but at different stages of a proceeding.

2—1401 of the Code of Civil Procedure. *Johnson v. Empire Mutual*, 70 Ill. App. 3d 780 (1979). Final orders are those that resolve a separate and distinct part of the controversy, conclude the litigation on the merits, or dispose of the parties' rights in relation to all or part of the controversy. *Bank of Ravenswood v. Domino's Pizza*, 269 Ill. App. 3d 714 (1995). In *Mutual Reserve Fund Life Ass'n v. Smith*, 169 Ill. 264, 265 (1897), the Illinois Supreme Court stated:

> "A final judgment means, not a final determination of the rights of the parties with reference to the subject matter of the litigation, but merely of their rights with reference to the particular suit. It is not at all necessary that the judgment should be upon the merits, if it definitely puts the case out of court. It is the termination of the particular action which marks the finality of the judgment. A judgment of non-suit or dismissal is final."

In *Kjellberg v. Muno*, 340 Ill. App. 133 (1950), the court held that a trial court order dismissing an appeal is a final order because otherwise there could be no review of the dismissal.

■ The words "without prejudice" in a dismissal order do not render it nonfinal for purposes of section 2—1401. A dismissal may be final for the purpose of appeal although it is without prejudice to the bringing of another action. *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157 (1982). In *People ex rel. Waite v. Bristow*, 391 Ill. 101, 112 (1945), the court stated:

> "Where an appeal is voluntarily dismissed by the appellant, the effect is to remove the appeal and the cause from the docket and from the jurisdiction of the court. The only effect of including the words 'without prejudice' in the order dismissing the appeal was to show that the judgment was neither affirmed nor reversed, nor the case decided on the merits. It left the appellant in the same position it was before the appeal was filed. The rights of the parties were in nowise affected by reason of the fact that the appeal had been taken and subsequently dismissed without prejudice. It left the judgment of the circuit court in full force and effect, the same as if no appeal had ever been taken. The appellant was free to perfect another appeal in any manner authorized by statute."

■ The effect of a dismissal order is determined by its substance and not by its form. *Boonstra v. City of Chicago*, 214 Ill. App. 3d 379 (1991). For example, in *Prendergast v. Rush-Presbyterian-St. Luke's Medical Center*, 78 Ill. App. 3d 538 (1979), the plaintiff's lawsuit alleged that the defendants unfairly denied her the right to continue her education for a master's degree. The trial court entered a consent order dismissing the cause. The trial court granted the plaintiff's section 2—1401 petition. The appellate court rejected the defendant's argument that the "without prejudice" language of the consent order

rendered it interlocutory in nature. The court reasoned that the consent order was final because there was no further action that the plaintiff could have taken in the trial court to relieve her from the effects of the order. *Prendergast*, 78 Ill. App. 3d at 541. In *Nashlund v. Sabade*, 39 Ill. App. 3d 139, 143 (1976), the trial court entered an order granting the plaintiffs' motion to dismiss their negligence suit "without prejudice to refile." The plaintiffs subsequently filed a section 2—1401 petition to vacate the dismissal order, which the trial court granted. The court, in affirming, held that the trial court had jurisdiction to consider the petition because the order was an agreed-upon dismissal as opposed to a voluntary nonsuit. *Nashlund*, 39 Ill. App. 3d at 146. The court went on to address whether the trial court abused its discretion in granting the petition, thereby implying that the dismissal order was final and appealable.

■ Applying these principles, we find that the trial court's dismissal order in the instant case was a final and appealable order. As in *Nashlund*, the trial court entered an agreed-upon dismissal of Physicians' first notice of appeal. The declaratory judgment order was final and appealable. The phrase "without prejudice" in the dismissal order shows that the parties were in the same position as they were before the appeal was filed. There was no further action that Physicians could have taken in the trial court to relieve it from the effects of that order. Physicians' only option at that point was to file another notice of appeal. Accordingly, the trial court's June 15, 2000, order responding to the petition under section 2—1401 rendered its dismissal of the notice of appeal a nullity and revested this court with jurisdiction over the declaratory judgment order.

Finally, we must determine whether the trial court abused its discretion in granting Physicians' section 2—1401 petition without an evidentiary hearing. The transcript from the hearing on the petition establishes that the judge did not address the substance of the petition.[5] Therefore, our scope of review is limited to a consideration of whether the petition to vacate is substantially insufficient at law. See *Washington v. Clayter*, 91 Ill. App. 3d 489 (1980) (finding that because the defendant did not present the appellate court with a transcript of the hearing on the motion, he waived all points that could be reviewed only by a consideration of what actually transpired at the hearing); *Stallworth v. Thomas*, 83 Ill. App. 3d 747 (1980) (because there was no

---

[5]Noting that the parties would dispute jurisdiction regardless of how he ruled, the trial judge stated that "[i]f I am going to err, I usually like to err on the side of including matters rather than excluding matters so therefore I am going to grant the motion to vacate the order."

transcript of the hearing on the defendant's section 2—1401 petition in the record, the court limited its review to whether the petition was substantially insufficient at law).

▮ The purpose of a section 2—1401 petition is to bring before the trial court facts not appearing in the record which, if known to the trial court at the time judgment was entered, would have prevented the judgment. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273 (1982); *In re Charles S.*, 83 Ill. App. 3d 515 (1980); *Klein v. Steel City National Bank*, 212 Ill. App. 3d 629 (1991). The petition must allege (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2—1401 petition. *Klein*, 212 Ill. App. 3d at 636. The petitioner must prove each element by a preponderance of the evidence. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986). A section 2—1401 petition may be granted solely on the basis of the affidavits supporting and opposing the petition if they do not controvert one another. *Ostendorf*, 89 Ill. 2d at 285-86. However, an evidentiary hearing is required if the central facts of a section 2—1401 petition are disputed. *Ostendorf*, 89 Ill. 2d at 286. Central facts are those that are sufficient to support an order vacating the judgment, not those that must be proven to succeed in the underlying action on its merits. *Smith v. Cole*, 256 Ill. App. 3d at 810. The motion is addressed to errors of fact, not law. *In re Charles S.*, 83 Ill. App. 3d at 517; *First National Leasing Corp. v. E.T.P. of Chicago, Inc.*, 158 Ill. App. 3d 882 (1987). "The granting or refusing of section 2—1401 relief must be decided according to the principles of fundamental fairness ***." *Commercial National Bank v. Mehta*, 144 Ill. App. 3d 924, 930 (1986). The conduct of the parties and their counsel may be examined in determining the sufficiency of the petition. *Washington*, 91 Ill. App. 3d at 495. The petition cannot be used to relieve a party of the consequences of his own negligence or that of his attorney. A reviewing court will not reverse a trial court's decision to grant or deny such a petition absent an abuse of discretion. *Allstates Tool Corp. v. Arachnid, Inc.*, 177 Ill. App. 3d 573 (1988).

▮ To prove the existence of a meritorious defense or claim, a petitioner must allege facts that would have prevented entry of the judgment if they had been known by the trial court. To prove due diligence in pursuing that claim or defense before judgment, the petitioner must allege that the failure to discover and present those facts before the judgment was not caused by his own fault or negligence. Therefore, Physicians must show that the ground asserted for relief would have prevented entry of the judgment had it been known by the trial court and that the failure to discover or present the ground for relief was

not the result of its own lack of diligence. Physicians' diligence in filing the petition is not an issue since it filed the petition approximately one month after Continental's motion to strike.

■ Physicians' petition alleges that it would not have dismissed the appeal had Continental not signed the stipulation; however, Physicians could have dismissed the appeal without the stipulation under Rule 309. See 134 Ill. 2d R. 309(a)(1). In any event, Physicians' affidavit alleges that at the time the stipulation was entered into, both parties believed that Continental's motion for costs rendered Physicians' first appeal premature. Continental's affidavit states that its attorney did not encourage the filing of the stipulation. The affidavit further states that Continental's attorney did not represent to Physicians' attorney that the first notice of appeal was premature or that the appellate court would have jurisdiction to review the declaratory judgment order if the appeal was dismissed. Physicians would like this court to find that a dispute exists as to what the parties believed at the time the stipulation was entered into. However, the real issue is whether Physicians could have discovered that the motion for costs did not render its appeal premature. Because there is no factual dispute concerning a central issue, the trial court did not err by granting the petition without an evidentiary hearing.

Physicians' apparent misunderstanding as to the effect of Continental's motion under Rule 303 was a procedural mistake of law. Procedural questions of law do not provide sufficient grounds upon which to vacate a judgment. See *First National Leasing Corp. v. E.T.P. of Chicago, Inc.*, 158 Ill. App. 3d 882 (1987) (discussing rules allowing period of time for party to file supplemental appearance after withdrawal of counsel). If, after researching the issue, Physicians was unsure as to what effect such a motion had under Rule 303, it could have asked the trial court to either insert Rule 304(a) findings into the declaratory judgment order or certify a question to this court under Rule 308 as to the effect of a motion for costs. Physicians' diligence is not apparent from the record. We note that the due diligence requirement may be relaxed if actual fraud or unconscionable conduct played a part in the trial court's judgment. See *Ruiz v. Wolf*, 250 Ill. App. 3d 121, 127 (1993). Physicians' petition and affidavit do not allege that Continental fraudulently concealed the fact that the appeal was timely or that Continental prevented Physicians from discovering this information. During oral argument, Continental's attorney indicated that he knew at the time he signed the stipulation that the first appeal was timely and that a dismissal would divest this court of jurisdiction over the declaratory judgement order. Nonetheless, Continental's attorney had no obligation to suggest this to Physicians' attorney.

We find that the trial court abused its discretion in granting Physicians' section 2—1401 petition because it is substantially insufficient at law. Accordingly, this court no longer has jurisdiction over the trial court's declaratory judgment order.

Physicians argues that the trial court erred as a matter of law in taxing the costs associated with the depositions because they were not "necessary." Physicians contends that Illinois courts permit litigants to recover the cost of discovery depositions only when the deposition testimony must be submitted for a particular witness or witnesses at a trial where other witnesses take the stand and testify. Physicians further contends that a trial on stipulated facts is no different than disposing of a case by motion, for which depositions costs are not taxable.

 █ Any costs assessed against a losing party must be specifically allowed by statute. Section 5—109 of the Code of Civil Procedure provides:

"Defendant to recover costs. If any person sues in any court of this state, in any action, wherein the plaintiff may have costs in case judgment is entered in favor of the plaintiff and the action is voluntarily dismissed by the plaintiff or is dismissed for want of prosecution or judgment is entered against the plaintiff, then judgment shall be entered in favor of defendant to recover defendant's costs against the plaintiff *** to be taxed ***." 735 ILCS 5/5—109 (West 1998).

In addition, Supreme Court Rule 208 provides:

"(a) Who Shall Pay. The party at whose instance the deposition is taken shall pay the fees of the witness and of the officer and the charges of the recorder or stenographer for attending. The party at whose request a deposition is transcribed and filed shall pay the charges for transcription and filing. The party at whose request a tape-recorded deposition is filed without having been transcribed shall pay the charges for filing, and if such deposition is subsequently transcribed the party requesting it shall pay the charges for such transcription. If, however, the scope of the examination by any other party exceeds the scope of examination by the party at whose instance the deposition is taken, the fees and charges due to the excess shall be summarily taxed by the court and paid by the other party.

* * *

(d) Taxing as Costs. The aforesaid fees and charges may in the discretion of the trial court be taxed as costs." 134 Ill. 2d Rs. 208(a), (d).

A trial court's decision to award costs and fees pursuant to Rule

208 will not be disturbed on review absent an abuse of discretion. *Galowich v. Beech Aircraft Corp.*, 209 Ill. App. 3d 128 (1991) (*Galowich II*).

As stated previously, six discovery depositions were taken in the instant case. Dr. Jennings stated that he supervised a resident during the Heistand surgery and participated where needed. The following day, Dr. Jennings became concerned that Heistand had suffered some type of central nervous system injury either during the operation or afterwards. Dr. Jennings later learned that Heistand suffered a stroke secondary to the blood loss and the drop in blood pressure during surgery. Within two days after the surgery, Dr. Jennings spoke with Dr. Menhusen, the anesthesiology department chairman, about reporting the matter to their liability insurance carrier because the case involved a "bad outcome." By "bad outcome," Dr. Jennings meant that the patient's condition was different from what had been expected or hoped in a negative way. Dr. Jennings did not recall the specifics of his conversation with Dr. Menhusen, but recalled that Dr. Menhusen indicated that he would report the matter to Continental. Dr. Jennings did not recall if Dr. Menhusen told him to report it to Nash.

Dr. Jennings reported the matter to Nash during a conversation approximately one to two weeks after the surgery. The conversation took place after a presentation Nash gave to the anesthesia department. Dr. Jennings did not remember if he gave Nash specific details about the "bad outcome" and did not recall if he gave Nash the patient's name. Nash acted as if he already knew about the matter. Nash did not instruct Dr. Jennings to report a possible incident or claim. Rather, Nash indicated that Dr. Jennings did not have to do anything further.

At the time he signed Physicians' application, Dr. Jennings was aware of Heistand's complications and knew that the possibility of litigation is increased if there is a bad outcome. Dr. Jennings understood that physicians in cardiology and neurology who consulted on the case opined that anesthesiology contributed in some way to Heistand's bad outcome; however, he claimed there was no real basis for their opinions.

Nash was employed by the medical malpractice plan affiliated with Olympia. The plan was insured by Continental, and Nash was the primary contact person for the physicians. Nash did not recall anyone bringing up the Heistand situation at the meeting. If the matter was mentioned in terms of a claim, Nash would have told that person to put it in writing. He did not know if he had a telephone conversation with Dr. Menhusen regarding Heistand's outcome. It was possible that Dr. Menhusen verbally reported the Heistand matter to him, but he

could not recall it. It was possible that he had a conversation with Dr. Jennings regarding the Heistand matter, but he did not remember it. Nash probably passed along verbal reports to Continental but he could not recall anything specifically. When Nash passed on a verbal report to Continental it would be informal and not an actual claim.

DiTuri stated that she receives notification of claims or potential claims from brokers and insureds. On rare occasions, reports of claims came in by phone. During training, she was told not to accept a verbal report and to ask the person to follow up with a written report. Until she receives written information, it is not considered a report. During 1991 and 1992 she may have had communications with Nash in which he reported claims to her. In determining that no claim had been reported in connection with the Heistand matter, she reviewed Continental's computer information and the file in the declaratory judgment action.

Dr. Brunner stated that he has reviewed 60 to 80 cases for purposes of determining whether there is medical negligence. He has never been asked to review a case for insurance coverage purposes, nor does he consider himself an expert in insurance matters as to what is a claim. It was his opinion that on and before July 1, 1992, Dr. Jennings was aware and/or reasonably should have been aware that a claim or suit might be brought against him as the supervising anesthesiologist during the Heistand surgery. Dr. Brunner opined that Dr. Jennings should have answered "Yes" to question 42 because Heistand had a significant disability.

Dr. Starck opined that, as a result of the operation, Heistand sustained a significant disability. Dr. Jennings was responsible for generating a plan of action and an anesthetic plan, as well as reviewing charts completed while he was out of the room. He did not know what Dr. Jennings' intention was in reporting the matter to Dr. Menhusen. If Dr. Menhusen told Dr. Jennings to report the matter to the malpractice carrier, Dr. Jennings would do so as a good preventative measure but would not predict that a claim was likely. If Dr. Jennings believed that he had no responsibility for the bad outcome because he was not in the operating room at the time, that belief was unreasonable. The only practice Dr. Starck was aware of was to report a claim when some sort of activity was initiated, such as a summons or records request.

Karlen stated that Physicians did not learn the circumstances surrounding the Heistand matter until sometime after Dr. Jennings was served with the complaint in the Weaver lawsuit. Had Physicians been provided with that information prior to the effective date of the policy, it would have either excluded the incident from coverage or would not

have offered "prior acts" coverage to Dr. Jennings. Question 42 is designed to "ferret out" circumstances that would lead to a claim or suit even if the prospective insured believes that the claim or suit would be without merit.

■ In *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157 (1982) (*Galowich I*), the Illinois Supreme Court held that Rule 208(d) authorizes that deposition costs can be taxed on the opposing party only if the depositions were necessary at trial. Therefore, the court ruled, such costs could not be assessed against a plaintiff who voluntarily dismissed a lawsuit before trial. *Galowich I*, 92 Ill. 2d at 166. The court reasoned that this interpretation of Rule 208(d) was in accordance with the principle that a successful litigant is not entitled to recover the ordinary expenses of litigation. The court wanted to avoid the situation where parties took unnecessary discovery depositions and then forced the opposing party to pay for them. The court further stated:

> "Though there may be instances in which a discovery deposition would become a necessity—as when a crucial witness died or disappeared before trial—it is difficult to say that all or even most of the depositions routinely taken in preparation for trial are necessary." 92 Ill. 2d at 166.

In *Galowich II*, this court interpreted the rule articulated in *Galowich I* and held that costs for depositions should be awarded if (1) the deposition is used at trial; and (2) the deposition is "necessary." The court defined necessity as "something that has the condition or quality of being necessary, that is 'indispensable' or 'needed to achieve a certain result.' [Citation.]" *Galowich II*, 209 Ill. App. 3d at 142. Therefore, the court held that depositions used to refresh a recollection or impeach a witness were not indispensable. 209 Ill. App. 3d at 142.

Illinois courts have consistently denied deposition costs expended during pretrial proceedings. For example, in *Premier Electrical Construction Co. v. Morse/Diesel, Inc.*, 257 Ill. App. 3d 445 (1993), the court held that discovery depositions listed in the defendants' motion to tax costs were not necessary for use at trial because a summary judgment, rather than a judgment on the merits, was entered. See also *In re Petition of the Village of Kildeer to Annex Certain Territory*, 191 Ill. App. 3d 713 (1989) (hearings on landowners' motions to vacate annexation ordinances are not considered "trials" for purposes of the award of costs); *Howell v. Thompson*, 161 Ill. App. 3d 466 (1987) (cost of evidence depositions used by a doctor in preparation for his defense of a medical malpractice suit were not taxable where the patient dropped the suit before trial); *Gebelein v. Blumfield*, 231 Ill. App. 3d 1011 (1992) (trial court improperly taxed to the defendant the deposi-

tion costs of the plaintiff's expert where the parties settled before trial). But see *Village of Franklin Park v. Aragon Management, Inc.*, 298 Ill. App. 3d 774 (1998) (finding that the trial court did not abuse its discretion in denying the plaintiff's petition for costs since he did not support his summary judgment motion with the depositions).

■ We agree with Continental that the trial court could not have made findings of fact if the case had been decided at the pretrial motion stage. In *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680 (1992), the plaintiff filed a retaliatory discharge suit against her employer. The trial court's order granting summary judgment in favor of the employer included a section entitled "findings of fact." The appellate court stated:

"[A] trial court should grant a motion for summary judgment only when no genuine issue of material fact exists. When granting that motion, a trial court resolves only questions of law. By definition, a trial court should deny summary judgment if it must make 'findings of fact.' " 229 Ill. App. 3d at 683.

Unlike *Premier*, *Howell*, and *Gebelein*, the instant case was resolved after a stipulated trial. The depositions were used at trial because the parties relied on them in preparing the stipulated testimony. The trial court also relied on the stipulated testimony in finding that Dr. Jennings was entitled to coverage under Physicians' policy but not under Continental's policy. Therefore, the witnesses' stipulated testimony enabled the trial court to resolve the questions that had prevented it from granting summary judgment earlier.

However, we reject Continental's argument that the depositions were necessary because it would have been impossible for the case to be tried on stipulated testimony otherwise. This court has strictly interpreted the necessity requirement. For example, in *Cleveland Wrecking Co. v. Central National Bank*, 216 Ill. App. 3d 279 (1991), the court held that the depositions of demolition subcontractors taken by the plaintiff were not "strictly indispensable" to the bench trial of a mechanics' lien foreclosure action since the witnesses had not died or disappeared. Similarly, in *Boyle v. Manley*, 263 Ill. App. 3d 200 (1994), the court held that the depositions of the parties and one of the witnesses were not indispensable to the bench trial since those individuals were available and actually testified. Therefore, the plaintiff could not recover the cost of the depositions.

Here, the parties validated the "necessity" of the depositions by agreeing to use them at the stipulated trial. If these same six witnesses had actually testified before the trial judge, Continental could not have recovered the cost of the depositions under the holdings of *Cleveland Wrecking* and *Boyle*. Therefore, the depositions of these wit-

nesses cannot fairly be considered "indispensable." Allowing the prevailing party in a stipulated trial to recover deposition costs would increase the cost of a stipulated trial, thereby conflicting with the policy concerns expressed in *Galowich* I. We note that depositions used at a stipulated trial are unlike videotaped depositions, which have been considered taxable. See *Perkins v. Harris*, 308 Ill. App. 3d 1076 (1999) (finding that a videotaped deposition played for the jury was "necessarily used at trial" because the physician's demanding surgery schedule prevented him from testifying at the trial).

For the foregoing reasons, we deny both motions to strike. We vacate Physicians' appeal of the trial court's declaratory judgment order for lack of jurisdiction. However, we find that even if appellate jurisdiction existed, we would affirm the trial court's finding that Dr. Jennings was covered only under Physicians' policy. The trial court's award of deposition costs to Continental is reversed, and we reduce the award by a total of $1,375.85 pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)).

No. 1—99—3445, Vacated.
No. 1—00—2235, Reversed.

QUINN, P.J., and HARTMAN, J., concur.