SPORTMART, INC., Plaintiff-Appellant, v. DAISY MANUFACTURING
COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—2660

Opinion filed December 15, 1994.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, Michael J. Wagner, Michael Tarpey, and Mark M. Burden, of counsel), for appellant.

Coles, Grasso, Fencl & Skinner, Ltd., of Chicago (Glenn F. Fencl and Jennifer E. O'Leary, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Plaintiff Sportmart, Inc., brought this declaratory judgment action seeking a determination that defendants, Continental Casualty and Continental's insured, Daisy Manufacturing, were required to defend and indemnify Sportmart in a personal injury suit involving a Daisy product. Following cross-summary judgment motions, the trial court granted judgment for defendants. On appeal, plaintiff raises the following issues: (1) whether the court erred in determining that Continental had no duty to defend plaintiff; and (2) whether Continental is estopped to deny coverage under its policy by its improper refusal to defend plaintiff.

The following facts are substantially undisputed. Sportmart operates a retail sporting goods chain in the Chicago area. Daisy manufactures "BB" guns and the .177-caliber pellets used as ammunition in them. Through its subsidiary, Olympic Distributors, Sportmart contracted with Daisy to sell the guns and pellets in a local retail store. As part of this contract, a certificate of insurance was issued to Olympic on Daisy's behalf. Daisy then procured a comprehensive general liability policy issued by Continental, which was effective from November 15, 1987, through November 15, 1988. Continental's policy contained an "Additional Insured—Vendors" endorsement, which provided coverage for vendors of products manufactured by Daisy, "but only with respect to 'bodily injury' or 'property damage' arising out of '[Daisy's] products' *** which are distributed or sold in the regular course of the vendor's business." The vendor's endorsement also contained the following exclusion:

"The insurance afforded [Sportmart] does not apply to:

* * *

e. Any failure to make such inspections, adjustments, tests or servicing as [Sportmart] has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products ***."

On or about November 17, 1989, Anthony Miceli, through his father Frank Miceli, Jr., brought a negligence action against Sportmart and another sporting goods store. The complaint charged that on December 2, 1987, 15-year-old Anthony Miceli was shooting a BB

gun near his home using pellets he purchased from Sportmart. A pellet ricocheted off of a light pole and penetrated his left eye, causing him to partially lose his sight. The complaint alleged Sportmart and its employees were negligent in that they (a) sold ammunition to plaintiff, who was under 21 years old, in violation of section 1 of the Firearm Owners Identification Card Act (Ill. Rev. Stat. 1987, ch. 38, par. 83—1 *et seq.*); (b) sold the ammunition to a minor under 16 years of age in contravention of established store policy; (c) sold the ammunition to the minor plaintiff when it knew or should have known that his use of the ammunition could result in injury; and (d) failed to determine plaintiff's age prior to selling the ammunition to him. There were no allegations of product liability. Sportmart filed an answer denying each of these allegations.

Pursuant to the vendor's endorsement, Sportmart tendered defense of the complaint to Daisy. In correspondence of January 31, 1991, Daisy refused the tender on the basis that the Micelis' complaint was premised upon Sportmart's negligence in selling the ammunition rather than upon any defect in Daisy's product. Sportmart's insurer then tendered the defense to Continental, apparently on or about October 7, 1992. Continental similarly rejected the tender on October 14, 1992.

On November 23, 1992, Sportmart filed its first-amended complaint for declaratory judgment, seeking a determination that Daisy and Continental were obligated to defend it in the Miceli lawsuit. Daisy and Continental moved for summary judgment, arguing that the vendor's endorsement covered only injuries resulting from a defect in Daisy's product. Sportmart responded with a cross-motion for summary judgment, claiming that it was entitled to coverage for any injury arising from the product regardless of whether any defect was alleged. Following a hearing, the trial court denied Sportmart's motion and entered summary judgment for Daisy and Continental. Sportmart then filed the instant appeal.

The primary issue on appeal turns upon the meaning of the phrase "arising out of" in the vendor's endorsement. Sportmart argues that this language unambiguously required Continental to defend it in all bodily injury claims resulting from the Daisy product. Alternatively, Sportmart contends that even if the language is ambiguous, all ambiguities must be construed in favor of Sportmart as the insured. Defendants respond that the purpose of the vendor's endorsement was to cover Sportmart for claims resulting from defects in the product rather than from Sportmart's own fault. Thus, because the Micelis' complaint was premised solely upon Sportmart's negligence in selling the pellets to a minor, the case was beyond policy coverage.

■ In determining the extent of an insurer's duty to defend, we look exclusively to the terms of the policy and the allegations of the underlying complaint. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 476, 430 N.E.2d 1104; *Employers Mutual Cos./ Illinois Emcasco Insurance Co. v. Country Cos.* (1991), 211 Ill. App. 3d 586, 591, 570 N.E.2d 528.) If the underlying complaint alleges facts *potentially* within the policy's coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73, 578 N.E.2d 926; *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245.) The insurer cannot justifiably refuse to defend unless the face of the complaint clearly fails to state facts which bring the case potentially within the policy's coverage. (*Wilkin*, 144 Ill. 2d at 73.) Moreover, the underlying complaint and policy must be construed liberally in favor of the insured; any doubts or ambiguities should be resolved against the insurer who drafted the policy. *Wilkin*, 144 Ill. 2d at 74; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091.

In the instant case, the policy language at issue provided as follows:

"ADDITIONAL INSURED—VENDORS

\* \* \*

WHO IS AN INSURED \*\*\* is amended to include as an insured any [vendor] \*\*\*, but only with respect to 'bodily injury' or 'property damage' *arising out of '[Daisy products]'* \*\*\* which are distributed or sold in the regular course of the vendor's business \*\*\*." (Emphasis added.)

■ The phrase "arising out of" repeatedly has been recognized as being broad as well as vague. (*Maryland Casualty*, 126 Ill. App. 3d at 154; *Aetna Casualty & Surety Co. v. Prestige Casualty Co.* (1990), 195 Ill. App. 3d 660, 665, 553 N.E.2d 39.) It must therefore be construed strictly against the insurer. (*Illinois Founders Insurance Co. v. Smith* (1992), 231 Ill. App. 3d 269, 275, 596 N.E.2d 59.) In worker's compensation claims and insurance litigation, this language is considered satisfied by a mere causal connection and does not necessarily require proximate causation. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 1068, 416 N.E.2d 758; *Maryland Casualty*, 126 Ill. App. 3d at 154.) Synonymous with "arising out of" are the terms "connected with," "incidental to," "originating from," "growing out of," and "flowing from." *Maryland Casualty Co.*, 126 Ill. App. 3d at 154; *Consolidated Rail Corp.*, 92 Ill. App. 3d at 1069.

Contrary to defendants' position in this case, there is nothing in Continental's policy limiting coverage to claims alleging a product defect. Further, provided the product is sold in the same condition as when it left Daisy's control, there is no policy exclusion for injuries directly caused by the product which are also attributable to the negligence of another party. Therefore, the broad language must be construed against the insurer to require coverage for all bodily injury "growing out of" or resulting from Daisy's product. (See *Maryland Casualty*, 126 Ill. App. 3d 150, 466 N.E.2d 1091; *Aetna Casualty & Surety Co. v. Ocean Accident & Guarantee Corp.* (3d Cir. 1967), 386 F.2d 413.) Indisputably, Miceli's injury would not have occurred but for his use of the pellets. Therefore, defendants' argument must fail and summary judgment must be reversed.

Both the trial court and defendants relied upon *Dominick's Finer Foods, Inc. v. American Manufacturers Mutual Insurance Co.* (1987), 163 Ill. App. 3d 149, 516 N.E.2d 544, as controlling in this case. In that case, we held that coverage under a vendor's endorsement was limited to injuries caused by the product itself; thus, it did not encompass an injury to a delivery man who sued the vendor when, while delivering the product, he slipped and fell on the vendor's loading dock. Unlike in the case at bar, however, it was clear in *Dominick's* that there was no causal link between the product and the injury; instead, the injury stemmed from the condition of the vendor's loading dock. That case and the cases upon which it relies do not address the applicability of a vendor's endorsement where the injury resulted from the use of the product and also the vendor's negligence. Thus, *Dominick's* is not decisive in this case.

Defendants further claim that they were absolved from providing coverage under the following policy exclusion:

"The insurance afforded [Sportmart] does not apply to:
* * *
e. Any failure to make such inspections, adjustments, tests or servicing as [Sportmart] has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products ***."

Defendants argue that "inspections" which plaintiff "agreed" or "normally undertook to make" included verifying the ages of prospective purchasers of the BB pellets. However, there was no evidence that plaintiff ever represented that it had a policy of verifying the age of its customers or that such verification was a condition of coverage. Nor was there any coverage restriction for the vendor's failure to adhere to laws regarding the sale of the product. Had defendants intended to so limit the policy, it was incumbent upon them to provide the desired exclusion.

■ Plaintiff also seeks to estop Continental from asserting any policy defenses because it failed to either defend the underlying case with a reservation of rights or file a declaratory judgment action. Continental does not dispute this failure, but maintains that estoppel is not warranted because an action to adjudicate the parties' rights was filed by plaintiff, and plaintiff was thus not prejudiced.

An insurer's duty to defend is triggered as soon as allegations in an underlying complaint show that the suit is potentially within policy coverage. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) Where the complaint presents a case of potential coverage, the insurer must either defend under a reservation of rights or seek a declaratory judgment that there is no coverage; if the insurer fails to do so, it is estopped from raising policy defenses in a subsequent action and is liable for any award against the insured. (*Murphy*, 88 Ill. 2d at 451.) Estoppel, however, is generally based upon conduct by the insurer which misleads the insured to its detriment or otherwise causes some demonstrable prejudice to the insured. (*Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.* (1979), 69 Ill. App. 3d 422, 429, 388 N.E.2d 23.) The burden of proving prejudice lies with the insured and must be met with clear and convincing evidence. *Royal Globe Insurance Co. v. Tutt* (1982), 108 Ill. App. 3d 69, 438 N.E.2d 943.

In support of their argument, defendants rely upon *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479, 501 N.E.2d 817, and *Prestige* (195 Ill. App. 3d 660, 553 N.E.2d 39). In both of these cases, primary carriers who refused to defend sought to avoid estoppel on the basis that their insureds, both of whom had judgments entered against them, had nonetheless been defended by other insurers and therefore suffered no prejudice. This court held that primary insurers could not escape liability merely owing to the " 'fortuitous existence of another insurer who is willing to meet its own obligations.' " *Northbrook*, 150 Ill. App. 3d at 485, quoting *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748-49, 358 N.E.2d 914; see also *Prestige*, 195 Ill. App. 3d 660, 553 N.E.2d 39.

More in line with the case at bar is *Village of Melrose Park v. Nautilus Insurance Co.* (1991), 214 Ill. App. 3d 864, 574 N.E.2d 198. In that case, as here, the insured initiated declaratory judgment proceedings to determine whether coverage existed, and the carrier responded with a motion for summary judgment. This court held that this was sufficient to defeat the insured's later estoppel claim, because it was "the fact of the declaratory judgment that [was] of legal import, and not the identity of the party initiating the

proceeding." *Village of Melrose Park*, 214 Ill. App. 3d at 867, citing *Ayers v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33, 35 n.1, 424 N.E.2d 1316.

In the case at bar, Sportmart initiated the instant action about one month after Continental refused its tender. Continental and Daisy responded with summary judgment motions, thereby seeking a determination of their responsibilities under the policy. Sportmart has not alleged prejudice from the fact that it was the one to initiate declaratory proceedings. Therefore, its claim for estoppel is without merit.

For the foregoing reasons, the judgment of the circuit court is reversed, and partial summary judgment is entered for Sportmart and against Continental on the duty to defend issue as raised in Sportmart's first amended complaint. This court makes no judgment as to Continental's duty to indemnify Sportmart in the event of a judgment against it.

Reversed and remanded for proceedings consistent with this opinion.

JOHNSON[1] and CAHILL, JJ., concur.

---

[1]Justice Johnson concurred in the disposition of this appeal before his retirement.