HARTFORD FIRE INSURANCE COMPANY, Plaintiff-Appellee, v. WHITEHALL CONVALESCENT AND NURSING HOME, INC., *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—99—2965, 1—99—4491 cons.

Opinion filed March 30, 2001.

Mayer, Brown & Platt, of Chicago (Alan J. Martin, Robert M. Dow, Jr., and Michael A. Olsen, of counsel), for appellants.

Johnson & Bell, Ltd., of Chicago (H. Patrick Morris and Kelly N. Warnick, of counsel), for appellee.

PRESIDING JUSTICE QUINN delivered the opinion of the court: This consolidated appeal arises out of a declaratory judgment ac-

tion filed by plaintiff, Hartford Fire Insurance Company (Hartford), against defendants, Whitehall Convalescent and Nursing Home (Whitehall), Whitehall North Convalescent and Nursing Home (Whitehall North), North & Woodbine Corporation (Woodbine), Steven Management Company (Steven Management), and Paul Mulder (Mulder) (collectively defendants). Hartford filed a motion for judgment on the pleadings which the trial court granted, finding that Hartford had no duty to defend or indemnify defendants in the underlying action. The trial court also denied defendants' motion for partial judgment on Hartford's pleadings. Following the trial court's rulings, Hartford filed a motion for reimbursement of costs it expended in defending defendants in the underlying action. The trial court granted Hartford's motion for reimbursement of defense costs in the amount of $102,985.34. Defendants appeal the trial court's rulings and contend that the trial court erred in: (1) finding that Hartford did not have a duty to defend; (2) denying defendants relief as to their affirmative defenses of estoppel and waiver; (3) dismissing defendants' counterclaims for breach of contract, statutory consumer fraud and common law fraud; and (4) granting Hartford's motion for reimbursement of defense costs where Hartford's reservation of rights failed to explicitly indicate its intention to seek reimbursement. For the following reasons, we reverse.

Defendants are each involved in the business of providing housing and care for elderly and infirm persons. Arthur Arenson is the executor of the estate of Sol Arenson, who is deceased and joined as a party as the designated representative of the class of persons who have been residents of Whitehall, Whitehall North, and Woodbine. On January 7, 1993, Arenson, individually and as a representative of the class of persons who have been residents and/or sponsors of Whitehall, Whitehall North or Woodbine, commenced an action (the Arenson complaint) against defendants. The Arenson complaint alleged that residents of the three nursing homes are not permitted to purchase and use medications on their own; rather, the individual who sponsors or guarantees payment of all amounts incurred by the resident signs a contract and agrees to be responsible for charges relating to prescriptions and medical supplies. Residents and/or sponsors also receive a document entitled "Schedule of Charges" which states that they will be billed for medications at the current rate charged by Weber Automated Systems, Inc. (Weber), the pharmacy and medical supply company used by defendants. The Arenson complaint alleged that since 1989, Whitehall, Whitehall North and Woodbine have consistently charged their residents and/or sponsors an amount in excess of what the nursing homes actually paid Weber for the prescriptions and

medical supplies. The Arenson complaint further alleged that defendants accomplished this by creating two sets of invoices for the products—one indicating the amount for which defendants had been billed and another reflecting inflated figures for defendants to present to their residents and/or sponsors. According to the complaint, this conduct was done with the intention to defraud the residents by misrepresenting the expenses they incurred in purchasing the products from Weber.

Counts I and II of the Arenson complaint sought recovery under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. 1961 *et seq.* (1994)). Counts VII and IX asserted violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1998)) and common law fraud. Count X alleged breach of contract against defendants due to dishonest billing for residents' medications.

Hartford issued health care facility professional liability policies and umbrella policies to defendants. Hartford's Health Care Facility Professional Liability Coverage provided coverage as follows:

"1. Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGE. This insurance applies only to 'medical incidents' which occur during the policy period. The injury must be caused by a 'medical incident.' The 'medical incident' must take place in the 'coverage territory.' We will have the right and duty to defend any 'suit' seeking these damages."

The policy defined "medical incident" in pertinent part as follows:

'Medical Incident' means any act or omission in the furnishing of professional health care services to any person, including:

a. The furnishing of food, beverages, medications or appliances in connection with such services;

\* \* \*

e. Failure to comply with any right of a health care facility resident under any state law regulating your business as a resident health care facility;

f. Failure to comply with any right of a resident as included in the United States Department of Health and Human Services regulation governing participation of intermediate care facilities and skilled nursing facilities regardless of whether your business is subject to such regulations; \*\*\*[.]

\* \* \*

Any such act or omission together with all related acts or omis-

sions in the furnishing of such services shall be considered one 'medical incident'."

The limits of insurance for each medical incident under the policy was $1 million. The medical incident aggregate limit was $2 million.

Defendants tendered the Arenson complaint to American Zurich Insurance Company (Zurich), which assumed defense of the Arenson litigation on January 21, 1993, for the period November 30, 1992, to November 30, 1993. Defendants issued notice of the Arenson complaint to Hartford on January 28, 1993, and Hartford acknowledged its receipt on February 3, 1993. On April 28, 1993, Hartford informed defendants that it was denying coverage. In its denial, Hartford stated that to "trigger coverage," the allegations must plead "an occurrence resulting in bodily injury or property damage." Hartford specifically set forth the definitions of the terms "occurrence," "bodily injury," and "property damage" with the statement that "[t]he allegations [in the complaint] do not plead same."

Upon its discovery that health care professional liability coverage had been mistakenly omitted from the policy issued to defendants, Hartford withdrew its denial of coverage for the claim on August 13, 1993, and stated that it would provide a defense subject to a reservation of rights, specifically stating the following:

"Please be advised that your Hartford policy was effective from 11/30/91 to '92. We will provide coverage for medical incidents which occurred during that period."

Hartford's letter made reference to punitive damages and injunctive relief as two areas for which the policy did not provide coverage. Hartford's letter also indicated that it would contribute 50% of Whitehall's defense costs and agreed to reimburse defendants for half of the defense costs it had incurred since January 1, 1993.

In the spring of 1994, the Arenson complaint was voluntarily dismissed with prejudice from state court. The Arenson complaint was subsequently filed in federal district court on April 2, 1994, and contained allegations similar to those contained in the state court complaint. Hartford did not issue another reservation of rights letter regarding its involvement in the federal action.

On July 1, 1996, Hartford sent a letter to defendants again denying coverage because the underlying action did not involve a "medical incident" and stated that Hartford's participation in the defense was subject to a "strict reservation of rights." The letter further stated:

"Based upon the foregoing, we must continue to reserve all of our rights with respect to this matter. Further, please be advised that in continuing to contribute to the defense of the underlying action, we do not waive any of the defenses available to us. Rather,

we reserve all our rights, including the right to assert additional or alternative defenses which may be applicable."

On January 31, 1997, Hartford filed its complaint for declaratory judgment. On March 21, 1997, Hartford filed an amended complaint for declaratory judgment and requested a declaration that: (1) the underlying allegations of the Arenson complaint did not involve a "medical incident" under the insuring agreement; (2) it had a duty neither to defend nor indemnify Whitehall, Whitehall North, Woodbine, Steven Management or Mulder in connection with the underlying action; and (3) the underlying action involved criminal or quasi-criminal conduct on the part of Steven Management and Mulder, and therefore Hartford had no duty to defend or indemnify them. Hartford then alleged that, because the underlying action involved acts or omissions of a professional nature on the part of Mulder, coverage was precluded under the policy's exclusion provision.

The Arenson litigation subsequently settled for $1 million. Defendants contributed $850,000 to the settlement and accepted a $150,000 settlement payment from Zurich. On July 16, 1999, the trial court denied defendants' motion for judgment on Hartford's pleadings and as to defendants' affirmative defenses of estoppel and waiver. Defendants also filed a counterclaim for declaratory relief alleging that Hartford breached its contractual obligations to defend and indemnify them.

Following argument from both parties, the court ruled that Hartford did not owe defendants a duty to defend the Arenson litigation because the complaint fell outside the scope of coverage provided by Hartford's health care professional liability policy. On August 13, 1999, defendants filed a notice of appeal of the circuit court's July 16, 1999, judgment in favor of Hartford (No. 1—99—2965).

On August 16, 1999, Hartford filed a motion for prove-up and a request for reimbursement of costs. Hartford alleged that it had expended $102,895.34 in the defense of the underlying action. Hartford further alleged that because the court found that it had no duty to defend or indemnify defendants, it was entitled to a reimbursement of the costs that it advanced in defending the Arenson action.

In response, defendants asserted, as they do on appeal, that insurers are not entitled to reimbursement of underlying defense costs unless they issue a reservation of rights letter that specifically reserves the right to seek reimbursement in the event that a court later determines in a declaratory judgment action that no duty to defend exists. Defendants asserted that in this case, Hartford never reserved the right to seek reimbursement of defense costs.

On September 7, 1999, the circuit court ruled as follows:

"Admittedly, Plaintiff's correspondence to the insured does not expressly state that it intended to seek reimbursement for defense costs. It does, however, strongly state that it did not believe there was coverage."

The court found that Hartford's July 1, 1996, letter to defendants sufficiently contemplated seeking reimbursement of costs. The court further ruled that assuming *arguendo* the reservation of rights was not specific enough, defendants were on implied notice that they would not be entitled to a free defense for intentional misconduct under a theory of unjust enrichment. The court stated: "[t]o reward the insured with a free defense for its obvious intentional misconduct would be violative of public policy. This Court exercises its equitable powers by granting Plaintiff's Motion for Costs."

Following the circuit court's denial of its motion for reconsideration, defendants filed a notice of appeal of the grant of Hartford's motion for reimbursement of costs on December 16, 1999 (No. 1—99—4491). On April 28, 2000, Hartford filed a motion to dismiss appeal No. 1—99—2965 on the ground that this court lacked jurisdiction. This motion was taken with the case.

■ Before addressing the merits of the issues raised, we first address whether defendants' notice of appeal filed in Appeal No. 1—99—2965 is sufficient to confer jurisdiction on this court. Every final judgment of a circuit court in a civil case is appealable pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301), and the filing of a notice of appeal vests jurisdiction in the appellate court to hear the appeals of such orders. *In re Application of the County Treasurer & ex-officio County Collector of Cook County for Judgment & Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for 1984*, 208 Ill. App. 3d 561, 567, 567 N.E.2d 486 (1990).

■ The time for filing a notice of appeal is governed by Supreme Court Rule 303 (155 Ill. 2d R. 303), which provides:

"Except as provided in paragraph (b) below, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion." 155 Ill. 2d R. 303.

A final order or judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely the rights of the parties to the litigation. *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 382 N.E.2d 1217 (1978).

■ Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) governs the

timing of appeals from final orders not disposing of all matters presented to the court and states in pertinent part:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." 155 Ill. 2d R. 304(a).

A Rule 304(a) finding is not required where a claim for fees is made after the principal action has been decided. *Servio v. Paul Roberts Auto Sales, Inc.*, 211 Ill. App. 3d 751, 759 (1991).

Hartford asserts that because its motion for reimbursement of defense costs was still pending when defendants filed their notice of appeal as to the declaratory judgment action, defendants' notice of appeal was premature and failed to confer appellate jurisdiction upon this court. In response, defendants assert that because Hartford filed its motion for reimbursement of defense costs after a decision was reached in the principal declaratory judgment action, its claim for fees is incidental or collateral and does not affect the finality or appealability of the July 16, 1999, judgment. In support of their assertion, defendants rely on *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 736 N.E.2d 179 (2000). In *Physicians Insurance Exchange*, the plaintiff, Physicians, and Continental Insurance Company (Continental) filed a declaratory judgment action seeking a determination as to coverage under professional liability policies issued to the defendant, Jennings. The trial court found that the defendant was entitled to coverage under the Physicians policy, but not under Continental's policy. Physicians filed a notice of appeal on July 23, 1999. Following the filing of Physicians' notice of appeal, Continental filed a motion to tax costs pursuant to section 5—109 of the Code of Civil Procedure (735 ILCS 5/5—109 (West 1998)). Pursuant to Physicians and Continental's stipulation, the trial court entered an order to dismiss Physicians' July 23, 1999, notice of appeal without prejudice to refile it. On August 31, 1999, the court awarded Continental costs. On September 29, 1999, Physicians filed a second notice of appeal from both the declaratory judgment order and the order granting Continental costs.

■ On appeal, this court reviewed whether the order granting declaratory judgment was a final order. Continental contended that

because Physicians dismissed the July 23, 1999, notice of appeal, the notice of appeal filed on September 29, 1999, vested this court with jurisdiction only as to the order granting Continental costs. Continental further claimed that its motion for costs was not a posttrial motion that extended the time for filing a notice of appeal. This court held:

"Here, Continental's motion sought costs accrued in the course of taking depositions. The declaratory judgment order related to medical malpractice coverage under competing insurance policies. The trial court's granting of Continental's motion did not result in modifying its original judgment. Therefore, Continental's motion was not directed against the declaratory judgment order. As in *Marsh*, the trial court's decision on the issue of deposition costs had no bearing on the effect of the trial court's declaratory judgment order. Continental's motion for costs did not directly challenge the judgment that was the basis of Physicians' first notice of appeal. Therefore, Physicians' first notice of appeal was timely and vested this court with jurisdiction over the trial court's declaratory judgment order." *Physicians Insurance Exchange*, 316 Ill. App. 3d at 452.

Hartford argues that *Physicians Insurance Exchange* is distinguishable because it involved a statutory request for costs entirely separate and collateral to the judgment. Hartford asserts that, unlike *Physicians Insurance Exchange*, its motion for reimbursement of defense funding in the Arenson action was "solidly intertwined" with the circuit court's July 16, 1999, judgment. Hartford also relies on cases involving motions for attorney fees and costs as a sanction under Supreme Court Rule 137 (*Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458 (1990)), or a fees request claimed in the pleadings of the principal action (*F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977 (1994)). We find Hartford's reliance on these cases to be misplaced and hold that *Physicians Insurance Exchange* is analogous to the case at bar. Here, the circuit court granted Hartford's motion for declaratory judgment on July 16, 1999. On August 13, 1999, defendants filed a notice of appeal (No. 1—99—2965) from this judgment. On August 16, 1999, Hartford filed a motion for reimbursement of defense costs. As Hartford filed its claim for reimbursement of defense costs after the trial court ruled on the declaratory judgment action, it was not made a part of the principal action, nor was it pending or at issue at the time defendants filed their notice of appeal from the declaratory judgment. Accordingly, a Rule 304(a) finding was not required and this court has jurisdiction over all matters in the case that were resolved in the declaratory judgment order of July 16, 1999.

We now turn to the merits of the case. Defendants first contend

that the trial court erred in entering judgment on the pleadings in Hartford's favor because according to the allegations contained in the Arenson complaint, Hartford had a duty to defend or indemnify defendants.

■ An insurer's duty to defend its insured is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions. *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500, 698 N.E.2d 271 (1998). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). In order for the insurer to justifiably refuse to defend the insured, it must be clear from the face of the underlying complaint that the allegations fail to state facts which bring the cause within or potentially within coverage. Furthermore, if the insurer relies on an exclusionary provision, it must be clear and free from doubt that the policy's exclusion prevents coverage. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564, 571 N.E.2d 256 (1991). Additionally, we must liberally construe the underlying complaint and the insurance policy in favor of the insured. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 74.

In accordance with the above propositions of law, we must first analyze whether Hartford had a duty to defend and, if so, whether it breached this duty. Defendants assert that, under the estoppel doctrine, Hartford denied coverage without seeking a timely declaratory ruling of no coverage.

■ The estoppel doctrine provides that an insurer which asserts that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not refuse to defend the insured. The insurer must defend that suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, it is estopped from later raising any policy defenses to coverage. *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 207-08, 579 N.E.2d 322 (1991).

■ We hold that estoppel does not apply in this case because Hartford did comply with its duty to defend. While Hartford initially denied coverage, it later accepted its duty to defend subject to a strict reservation of rights. Hartford then filed a declaratory judgment action seeking a determination of whether there was coverage under the policy.

We next assess the underlying complaint in light of the applicable policy provisions to determine whether the claim is within or potentially within coverage. The policy language at issue provided that Hartford would furnish coverage for injuries caused by a "medical incident." The Hartford policy defined "medical incident" as "any act or omission in the furnishing of professional health care services to any person," including: (a) the furnishing of food, beverages, medications, or appliances in connection with such services; or (b) the failure to comply with any right of a health care facility resident under any state law regulating the resident health care facility business. Defendants argue that the policy language "in connection with" coupled with the allegations in the underlying complaint bring the case at least potentially within the policy's coverage. Hartford asserts that a claim for false billing is not plainly within the scope of the health care professional liability policy.

■ The phrase "in connection with" as used in the Hartford policy has been construed as being broad as well as vague. *Sportmart, Inc. v. Daisy Manufacturing Co.*, 268 Ill. App. 3d 974, 977, 645 N.E.2d 360 (1994). Therefore, it must be construed strictly against the insurer. *Illinois Founders Insurance Co. v. Smith*, 231 Ill. App. 3d 269, 275, 596 N.E.2d 59 (1992).

■ The Arenson complaint alleged that in connection with the provision of medical treatment, defendants falsely billed their residents and/or sponsors. The complaint alleged that defendants promised and agreed that residents' prescription drugs and pharmaceutical supplies would be charged in the amount Weber actually charged defendants for them. According to the complaint, defendants published and distributed a "Schedule of Charges" in which they represented that residents and/or sponsors would be billed at the rate charged by Weber. The complaint further alleged that defendants and Weber produced two different sets of invoices to deceive and cheat residents and/or sponsors by fraudulently misrepresenting the amount defendants paid for medical and pharmaceutical supplies. In our view, these allegations constituted a "medical incident" as defined by the Hartford policy. The Hartford policy provided coverage for the rendering of professional medical treatment to its residents. Under the policy, the furnishing of medications in connection with the rendering of such professional medical treatment is defined as a "medical incident." Contrary to Hartford's contention, there is nothing in the policy to indicate that coverage is limited solely to the provision of health care services.

Finally, in light of our holding that the Hartford policy provided coverage, we find it is unnecessary to reach defendants' contentions

regarding their counterclaim or Hartford's motion for reimbursement of defense costs.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

GREIMAN and THEIS, JJ., concur.