FIFTH DIVISION
December 12, 2008

No. 1-07-0629

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 01CH7733 |
| ANTEL CORPORATION, ANTEL SYSTEMS CORPORATION, MARQUITA R. FLOWERS, Administrator of the Estate of Paul Flowers, Deceased, LUPE DIAZ and KAREN DIAZ, | ) ) ) ) ) | The Honorable David Donnersberger, Judge Presiding. |
| Defendants-Appellants. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

This insurance coverage case arises from a declaratory judgment action filed by St. Paul Fire and Marine Insurance Company (St. Paul), which named as defendants Marquita Flowers as special administrator of the estate of her husband Paul Flowers, Lupe Diaz and his wife Karen Diaz (Diaz), Antel Corporation, and Antel Systems Corporation. The complaint sought a declaration that St. Paul owed no duty to defendant Antel Corporation or Antel Systems Corporation in consolidated wrongful death and injury cases filed by Flowers and Diaz, respectfully. St. Paul filed a motion for summary judgment, which the trial court granted. This appeal follows.

BACKGROUND

The underlying cases arose from an 1988 explosion and fire at the Bridgeview, Illinois, Union Oil Company of California's (Unocal) chemical processing plant. Unocal employee Paul

Flowers suffered extensive burns in the explosion, which, after months of treatment, led to his death. Another Unocal employee, Lupe Diaz, was also injured in the explosion.

Flowers and Diaz filed separate lawsuits, which were eventually consolidated. The underlying complaints at issue in the declaratory judgment action named Antel Corporation (Antel), Rosemount Corporation and Antel Systems Corporation (Systems) as defendants. The initial wrongful death and personal injury complaint also named Kaye Instruments, Inc. (Kaye), along with other defendants.

The chain of events that led to the Unocal explosion began in 1985 when Unocal began an optimization project, which converted its manually operated pneumatic control system to a computer controlled, automatic batching system in a room called the R-5 reactor room. One of the tanks or vessels in that room was called vessel V-211. Unocal used the R-5 reactor room and vessel V-211 to combine monomers and other ingredients to create polymers, which were used to manufacture paint and other commodities. Prior to the optimization project, the chemical production was a manually operated process in which Unocal operators had to open and close valves to measure chemical components and flow rates, manually set agitation speeds for blending, and manually dial in the correct temperature points for each chemical process.

The overall control of the automatic batching system was performed by a programmable logic controller (PLC). The batch recipes were stored in a personal computer. The PLC used the batch recipes to control the various vessels, valves, and instruments in the R-5 reactor room.

As part of the optimization project, Unocal purchased temperature control devices from Kaye Instruments. Central to the case at bar was a Digi-Link controller (the Kaye controller)

manufactured by Kaye Instruments and connected to vessel V-211. Although the Kaye controller could be programmed to perform various operations, in the Unocal system it was used solely to control the temperature inside vessel V-211. Specifically, temperature set points from an automatic batch recipe were sent from the PLC to the Kaye controller, which then adjusted temperature in vessel V-211. The Kaye controller, however, also allowed an operator to manually input temperature set points directly.

On July 25, 1988, vinyl acetate, a monomer, was pumped into vessel V-211. The batch recipe did not call for heating the vinyl acetate, but the vessel was, nonetheless, heated. The vinyl acetate vaporized, ignited, and exploded, injuring Flowers and Diaz.

The Kaye controller and the Unocal system could have been programmed to prevent the infusion of vinyl acetate into the heated vessel V-211, but this was not part of the optimization project's design. At the time of the explosion, the Kaye controller performed as it was designed to perform.

Flowers and Diaz filed suit against Antel, Systems, and Kaye, among others. Antel is an Illinois corporation formed in 1982 that sells industrial devices built by various manufacturers either as a direct distributor or a manufacturer's representative. Kaye was one of these manufacturers.

According to deposition testimony from former Antel employee Jay Benning, during Unocal's optimization project from 1985 to 1987, Antel sold Kaye products as either a manufacturer's representative or a direct distributor. In both cases, Antel presented the product to the customer, described its capabilities, and sent a price quotation. Sometimes, Antel acted as

a distributor by reselling a product it had purchased from Kaye.  Much of the time, however, the customer sent an order for a product to Kaye via Antel.  Antel then sent the order to Kaye, which generally shipped the product directly to the customer.  Kaye billed the customer and sent a 15% commission to Antel.

Benning testified that, specific to Unocal's optimization project, Antel acted as a manufacturer's representative for Kaye.  It sold Unocal several Kaye devices, including the Kaye controller at issue in the underlying case.  According to Antel president Robert Manning,  Antel sold the Kaye products to Unocal in the ordinary course of Antel's business.  Kaye shipped them directly to Unocal, and Antel did not modify the Kaye products.

Benning and Manning formed Systems in 1985 to provide computer programming and other services to support the Unocal optimization project.  Systems helped connect and configure the various devices Unocal purchased to use in the optimization project.  It also did contract programming on an hourly basis.  Antel provided only equipment to Unocal, and Systems provided only services.

The original underlying complaints contained, in relevant part, counts against Kaye for strict and negligent product liability and for breach of an implied warranty of fitness for a particular purpose.  Both complaints were voluntarily dismissed, refiled in 1995, and then amended several more times.

Kaye filed a motion for summary judgement, arguing that there was no evidence of a product defect.  The underlying plaintiffs did not contest the motion.  On February 17, 2000, the trial court entered an order granting summary judgment and dismissing Kaye from the lawsuit

after finding:

"No evidence of a defect in the Kaye product having been presented."

The order applied to Kaye only and did not affect any other defendant.

Up to the point of summary judgment, St. Paul had been defending Kaye, but also defending Antel and Systems under a reservation of rights pursuant to a liability insurance policy issued to Kaye. That insurance policy contained a vendor's endorsement which extended coverage to vendors of Kaye products. The endorsement reads:

"**Protection For Vendors Of Your Products**

We'll protect any vendor named above for claims resulting from the sale or distribution of your products described above and sold in the usual course of the vendor's business."

Antel is a named vendor under this endorsement. Systems is not. The endorsement included several limitations, including:

"**Relabeling - components**. We won't cover bodily injury or property damage resulting from products you have sold or distributed to a vendor which the vendor:

Has labeled or relabeled.

Has used as a container, part or ingredient of anything else."

On May 8, 2001, St. Paul filed the instant declaratory judgment action, revealing for the first time that it had been defending Antel and Systems, and claiming that the uncontested grant of summary judgment to Kaye had obviated St. Paul's duty to defend Antel.

At issue here is whether Antel is an insured under the St. Paul policy issued to Kaye

Instruments. St. Paul sought summary judgment on several alternative bases, including: (1) the vendor's endorsement did not provide coverage because Antel, as a manufacturer's representative, was not a vendor within the meaning of the policy; (2) even if Antel were considered a vendor, the endorsement did not apply because the injuries did not "result from" the sale of the Kaye controller, but from the way that it and the Unocal system were programmed; and (3) Antel was excluded from coverage under the exclusions to the vendor's endorsement, which provide, in relevant part:

> "**Change in condition.** We won't cover bodily injury or property damage resulting from a change made in condition of any of your [Kaye's] products by a vendor * * * "

And

> "**Relabeling - components**. We won't cover bodily injury or property damage resulting from products you have sold or distributed to a vendor which the vendor:
> Has labeled or relabeled.
> Has used as a container, part or ingredient of anything else."

Before St. Paul filed its motion for summary judgment, Flowers and Diaz filed amended complaints without objection. The complaints allege, *inter alia*, that Antel recommended to Unocal that it purchase the Kaye controller, that Unocal did so, and that Antel received a commission from the sale. The complaint also alleges that Antel was negligent in recommending the Kaye controller for use in an automatic system because the Kaye controller allowed manual override of the computer control system. According to the complaints, these acts or omissions caused or contributed to the explosion.

6

The trial court granted summary judgment in favor of St. Paul on September 11, 2006. In its memorandum order, the court noted that, because Systems was not a named vendor in the Kaye policy, it was not covered under the policy. As to Antel, the court discussed Sportmart, Inc. v. Daisy Manufacturing Co., 268 Ill. App. 3d 974 (1994), in which this court held that, under a vendor's endorsement limited to "injuries caused by the product itself," coverage was required for all bodily injury arising out of, growing out of, or resulting from Daisy's product, even where that product was not defective. Sportmart, 268 Ill. App. 3d at 978. Relying on Sportmart, however, the trial court held:

> "there is no causal link between the sale or distribution of the Kaye temperature
>
> controls by Antel and the injuries sustained by Flowers and Diaz."

In addition, the court held that coverage was also excluded under the vendor's endorsement, which excluded coverage where a vendor has used the product in question as a part of something else. The court held:

> "Diaz and Flowers allege that the Kaye temperature controllers were part of a
>
> system designed by Antel. As such, the Kaye temperature controllers were used
>
> by Antel as "part . . . of anything else" and there is no coverage under the
>
> Vendor's endorsement."

Flowers and Diaz appeal from this order.

## ANALYSIS

Initially, we note St. Paul argues that, because Flowers and Diaz failed to specifically address the portion of the trial court's order granting summary judgment to Systems, they have

7

waived this issue on appeal. Flowers responds that she seeks reversal of the trial court's order only as to Antel Corporation. Although Diaz did not file a separate reply brief, Diaz did not address the order as pertaining to Antel Systems in his appellant's brief. Accordingly, our analysis here is limited to a review of the St. Paul insurance policy specific to Antel Corporation.

Flowers and Diaz contend that the trial court erred in its entry of summary judgment because: (1) the asserted injuries resulted from the sale of the Kaye controller; (2) the Kaye controller was not incorporated into another product by Antel and then resold by Antel; and (3) as applied by the court, the exclusion makes coverage illusory. St. Paul responds that the policy exclusion unambiguously applies and there is no duty to defend because: (1) the liability asserted in the underlying action did not result from the sale of the Kaye controller; (2) coverage was excluded because the Kaye controller was incorporated as a part of the larger Unocal automation system; and (3) Antel was not a "vendor" within the meaning of the vendor's endorsement. We find that at least one allegation in the complaint is outside the exclusion and falls within or potentially within the policy's coverage. Accordingly, we find error in the trial court's ruling.

We first note that St. Paul argues that the earlier summary judgment granted to Kaye is dispositive of the case before us. We disagree. The record before us on appeal is limited to the pleadings and other documents specifically relevant to this appeal. It includes Kaye's motion for summary judgment and the trial court's order granting the motion. There is no transcript to any hearing on the motion. The appellants' briefs state:

"[T]he order granting summary judgment to Kaye did *not* adjudicate the question

whether the alleged inappropriate sale of the Kaye product was a cause of the

8

explosion. That allegation (which is backed up by expert testimony adduced years ago) is still pending. Indeed, all of the allegations in the current underlying complaint have withstood numerous motions to dismiss and summary judgment motions." (Emphasis in original.)

From the order granting summary judgment to Kaye, it is clear that the trial court limited its determination to whether the Kaye controller was defective and found that it was not. Contrary to St. Paul's assertion, this is not dispositive to the issue at bar. Here, the question is whether St. Paul is obligated to defend Antel, a named vendor insured via the vendor's endorsement in Kaye's St. Paul policy, regardless of whether the product itself was defective.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). We review cases involving summary judgment *de novo* (Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998)) and we will only disturb the decision of the trial court where we find that a genuine issue of material fact exists. Addison v. Whittenberg, 124 Ill. 2d 287, 294 (1988).

The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. Central Illinois Light Co. v.

9

Home Insurance Co., 342 Ill. App. 3d 940, 950-51 (2003). "To ascertain the intent of the parties

and the meaning of the words used in the insurance policy, the court must construe the policy as a

whole, taking into account the type of insurance for which the parties have contracted, the risks

undertaken and purchased, the subject matter that is insured and the purposes of the entire

contract." Crum & Forster Managers Corp., 156 Ill. 2d at 391. To determine an insurer's duty to

defend its insured, we must look to the allegations in the underlying complaint and compare them to

the relevant provisions of the policy. Northbrook Property & Casualty Co. v. Transportation Joint

Agreement, 194 Ill. 2d 96, 98 (2000). "If the underlying complaints allege facts within or

potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations

are groundless, false, or fraudulent." Northbrook Property & Casualty Co., 194 Ill. 2d at 98.

Insurance policies are to be liberally construed in favor of coverage, and courts will resolve any

existing ambiguity against the insurer. United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d

955, 964 (2005); see also Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90,

108-09 (1992) (words of an insurance policy that are open to more than one reasonable

interpretation are ambiguous and must be construed in favor of the insured and against the insurer

who drafted the policy). "Provisions in an insurance policy that limit or exclude coverage are also

construed liberally in favor of the insured and against the insurer." United Services Automobile

Ass'n, 357 Ill. App. 3d at 964. "In order for the insurer to justifiably refuse to defend the insured, it

must be clear from the face of the underlying complaint that the allegations fail to state facts which

bring the cause within or potentially within coverage. Furthermore, if the insurer relies on an

exclusionary provision, it must be clear and free from doubt that the policy's exclusion prevents

10

coverage." <u>Hartford Fire Insurance. Co. v. Whitehall Convalescent & Nursing Home, Inc.</u>, 321 Ill. App. 3d 879, 888 (2001).

Here, the allegations in the underlying complaint are sufficient to trigger St. Paul's obligation to defend its insured. The complaint alleges, *inter alia*, that Antel recommended to Unocal that it purchase a Kaye controller for the purpose of measuring temperature in vessel V-211. It also alleges that Unocal ordered the device from Kaye and that Antel received the commission for the sale. The complaint alleges that Antel was negligent in recommending and selling an inappropriate product that would allow manual overrides of an automated system. Finally, the complaint alleges that all of these acts were a proximate cause of the explosion that injured Flowers and Diaz.

The relevant vendor's endorsement, drafted by St. Paul and listing Antel as a covered entity, conditions coverage to claims "resulting from the sale or distribution" of a Kaye product. Coverage under such an endorsement does not require a product defect. <u>Sportmart</u>, 268 Ill. App. 3d at 978. Rather, the phrase "resulting from" is "synonymous with the phrases 'arising out of,' 'connected with,' 'originating from,' 'growing out of,' and 'flowing from' which have been recognized repeatedly as being broad as well as vague." <u>Farmers Automobile Insurance Ass'n v. Hunt</u>, 301 Ill. App. 3d 716, 719 (1998), citing <u>Sportmart</u>, 268 Ill. App. 3d at 978 (holding that coverage is required for all bodily injury arising out of, growing out of, or resulting from Daisy's product). Therefore, the phrase must be liberally construed in favor of the insured. <u>American Economy Insurance Co. v. DePaul University</u>, 383 Ill. App. 3d 172, 178 (2008). Accordingly, "but for" causation rather than proximate causation satisfies this language. <u>American Economy Insurance</u>

Co., 383 Ill. App. 3d at 178; Farmers Automobile Insurance Ass'n, 301 Ill. App. 3d at 719

("Resulting from" language is satisfied by a mere causal connection).

It is uncontested that the Kaye controller was installed as part of Unocal's optimization

program. It is also uncontested that the purpose of the Kaye controller was to automatically adust

the temperature in vessel V-211, but it also allowed manual overrides. It is further uncontested that

the explosion which caused the injuries in question occurred because, contrary to the batch recipe,

vessel V-211 was heated, causing the injected vinyl acetate to vaporize, ignite, and explode. Since

the injuries would not have occurred but for the Kaye controller, the underlying action falls

potentially within the coverage afforded by St. Paul, thereby triggering its duty to defend Antel.

See Sportmart, 268 Ill. App. 3d at 978.

We also find error in the trial court's determination that coverage was excluded under the

vendor's endorsement because the Kaye component was connected to other devices after the sale.

The exclusion to which the court referred states:

> "**Relabeling - components**. We won't cover bodily injury or property damages
>
> resulting from products you have sold or distributed to a vendor which the vendor:
>
> Has labeled or relabled.
>
> Has used as a container, part or ingredient of anything else."

St. Paul relies on Traveler's Insurance Co. v. Freightliner Corp., 256 Ill. App. 3d 1049 (1993), to

argue that coverage is excluded because Unocal used the Kaye controller as a component part of a

larger system. We find Freightliner inapposite to the case at bar. In Freightliner, defendant

Freightliner Corporation was a manufacturer that assembled and sold trailer truck cabs.

12

Freightliner, 256 Ill. App. 3d at 1050. Freightliner purchased seats from National Seating Company (National), incorporated those seats into its trucks as a component part of each truck, then sold those trucks to its customers. Freightliner, 256 Ill. App. 3d at 1050. Freightliner and National were both named as defendants in lawsuits by truck drivers who claimed they were injured because of an unreasonably dangerous condition of the seats. Freightliner, 256 Ill. App. 3d at 1050. National was insured by Traveler's Insurance under an insurance policy that contained a vendor's endorsement excluding coverage for injury arising out of:

> " 'Products which after distribution or sale by the named insured have been labeled
>
> relabeled or used as a container, part or ingredient of any other thing or substance
>
> by or for the vendor [.]' " Freightliner, 256 Ill. App. 3d at 1052.

We held that the exclusion applied because Freightliner "used the seats manufactured by National in the trucks which it manufactured and sold as a finished product." Freightliner, 256 Ill. App. 3d at 1056.

Freightliner is inapposite to the case at bar, where, unlike Freightliner, Antel is not a manufacturer, but merely a seller of goods. Specifically, Antel did not purchase the Kaye controller, incorporate it into another device, and then sell it to Unocal. Instead, Antel marketed and sold the product to Unocal, which then utilized the product as it was intended to be utilized. The allegations regarding the Kaye controller are that Antel sold a product inappropriate for the use to which it knew it would be put. Connecting a device at the user's facility precisely as the product was designed to be connected does not render the device a "component" for purposes of the exclusion.

Moreover, no purpose is served by providing full coverage for a product whose only use is as part of another product and then removing all coverage in another clause when the product is so used. See <u>Murray Ohio Manufacturing Co. v. Continental Insurance Co.</u>, 705 F. Supp. 442, 445 (N.D. Ill. 1989). Our function when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. <u>Central Illinois Light Co.</u>, 342 Ill. App. 3d at 950-51. Where, as here, an insurer relies on an exclusionary provision, it must be clear and free from doubt that the exclusion prevents coverage. <u>Hartford Fire Insurance Co.</u>, 321 Ill. App. 3d at 888. In construing the policy at hand, we note that the parties' intent in the agreement could not have been to exclude coverage when the product was put to its intended purpose, thereby making coverage illusory. Accordingly, because the interpretation of this exclusion is not "clear and free from doubt," it does not apply to in this case.

We are also unpersuaded by St. Paul's argument that Antel was not covered by the vendor's endorsement because it was not a vendor within the meaning of the endorsement. Specifically, St. Paul asserts that, because Antel acted as a manufacturer's representative in its sale of the Kaye controller, as opposed to acting as a distributor, Antel did not "sell" the product at issue. Antel employee Benning testified that Antel sold Kaye products as either a manufacturer's representative or a direct distributor. In both cases, Antel presented the product to the customer, described its capabilities, and sent a price quotation. Sometimes, Antel acted as a distributor by reselling a product it had purchased from Kaye. Often, however, the customer sent an order for a product to Kaye via Antel, which sent the order to Kaye, which then shipped the product directly to the customer. In both situations, Antel received a commission. Specific to the Kaye controller, Antel

14

acted as a manufacturer's representative, selling the Kaye product in the ordinary course of Antel's business, and was paid a commission for the sale. St. Paul's argument that this activity was not that of a "vendor" is incredible at best and disingenuous at worst. To the extent that St. Paul interprets these terms differently, it has illustrated an ambiguity in the contract which must be construed against the insurer. See United Services Automobile Ass'n, 357 Ill. App. 3d at 964.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Cook County as to Antel Systems, reverse the judgment as to Antel Corporation, and remand for proceedings consistent with this opinion.

Affirmed in part; reversed in part; remanded.

TULLY and O'MARA FROSSARD, JJ., concur.

No. 1-07-0629

Please use the following form

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiff-Appellee,

v.

ANTEL CORPORATION, ANTEL SYSTEMS CORPORATION, MARQUITA R. FLOWERS, Administrator of the Estate of Paul Flowers, Deceased, LUPE DIAZ and KAREN DIAZ,

Defendants-Appellants.

| | |
|---|---|
| Docket No.<br><br>COURT<br>Opinion<br>Filed | No. 1-07-0629<br><br>Appellate Court of Illinois<br>First District, <u>FIFTH</u> Division<br><br>December 12, 2008<br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:<br><br>TULLY and O'MARA FROSSARD, JJ., concur. |
| APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Cook      Appeal from the Circuit Court of Cook County.<br><br>The Hon. David Donnersberger, Judge presiding. |
| FOR APPELLANTS<br>John Doe, of Chicago<br><br>For APPELLEES, : | Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word or NONE if not represented.<br><br>APPELLANT FLOWERS: CORBOY & DEMETRIO, P.C., Chicago, IL Philip H. Corboy, Kenneth T. Lumb |
| Smith and Smith of Chicago, | APPELLANT DIAZ: SUSMAN, SELIG & ROSS, Chicago, IL Erron H. Fisher |
| (Joseph Brown, of counsel)<br>Add attorneys for third- | APPELLEES: HINSHAW & CULBERTSON LLP, Chicago, IL Stephen R. Swofford, Fritz K. Huszagh, Kenneth J. Cummings |
| party appellants and/or appellees. | |